Josephine A. FOOTE, Plaintiff-Appellant,

v.

Shirley S. CHATER, Commissioner of Social Security, Defendant–Appellee.

No. 93–2496.

United States Court of Appeals, Eleventh Circuit.

Nov. 3, 1995.

Emily W. Lawyer, Tampa, FL, for appellant.

Steven D. Exum, Office of the General Counsel, Social Security Division, Dept. of Health & Human Srvcs., Baltimore, MD, Whitney L. Schmidt, Asst. U.S. Atty., Tampa, FL, for appellee.

Before KRAVITCH and BIRCH, Circuit Judges, and HOEVELER *, Senior District Judge.

PER CURIAM:

Josephine Foote appeals from a district court order granting judgment in favor of the Secretary of Health and Human Services (Secretary) who denied Foote's application for disability benefits under the Supplemental Security Income Program of the Social Security Act. 42 U.S.C. §§ 1381 *et seq.*

On appeal, Foote maintains that the Administrative Law Judge (ALJ) who heard her case at the agency level failed to give adequate weight to the opinion of her treating

* Honorable William M. Hoeveler, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

physician and ignored her complaints of pain in determining that she could perform certain jobs. Because there is substantial evidence in the record that Foote's subjective complaints of pain were supported by medical testimony, and because the ALJ failed to utilize the testimony of a vocational expert—relying instead exclusively on a mechanical application of the medical-vocational guidelines (the "grids"), this Court reverses the District Court's judgment upholding the Secretary's determination. The case shall be remanded for a new hearing.

## BACKGROUND

Foote, who worked for more than eight years as a laundry worker (T. 38), filed an application for disability and disability insurance benefits on June 6, 1990, alleging disability since February 9, 1987, due to a herniated and degenerating disc. (Foote had filed an unsuccessful application in December 1988, but explained that she had not pursued the earlier denial, because she was filing for Workmen's Compensation at the time and did not read her notice of denial of disability benefits.)

After receiving an unfavorable initial determination and denial of her request for reconsideration, Foote requested a hearing. On August 6, 1991, an ALJ heard Foote's case and on August 16, 1991, issued a decision finding Foote not disabled. On February 21, 1991, the Appeals Council denied Foote's request for review, rendering the ALJ's decision as the final decision of the Secretary.

On April 16, 1992, Foote brought a civil action to challenge the decision. On March 8, 1993, the district court affirmed the Magistrate Judge's Report and Recommendation of February 17, 1993, upholding the Secretary's decision denying Foote's claim for disability insurance benefits. Foote timely appealed.

## APPELLANT'S MEDICAL HISTORY

On May 4, 1987, Dr. Joseph E. Rojas reported first examining appellant Foote on referral from Dr. Leon Osmon. Foote was treated by Dr. Rojas for three months for cervical pain radiating into the left arm and hand. A May 15, 1987, X-ray revealed some bone spurring and other changes at the C4–5 and C5–6 levels. Dr. Rojas believed that the pain was caused by degenerative disc disease. He recommended that conservative treatment be tried for several months.

Appellant Foote then consulted a neurosurgeon, Dr. G. Montoya. He recommended physical therapy on an outpatient basis. On June 24, 1987, Dr. Montoya reported that Foote had pain in the left arm upon right lateral bending. Dr. Montoya diagnosed cervical radiculopathy (disease of the nerve roots) and a herniated cervical disc. Although Dr. Montoya found a slight decrease in sensation in the left forearm, he found otherwise normal reflexes and sensations. On June 26, 1987, Foote entered a hospital in Orlando for spinal X-rays. Foote was discharged the next day, after Dr. Montoya found some degenerative changes in the cervical spine and defects at C4–5 and C5–6. On July 14, 1987, Foote entered another medical center in Orlando for surgical intervention to remedy the disc problem and relief of nerve root compression. The doctors performed a left C5–6 foraminotomy and root decompression on July 15, 1987. On August 31, 1987, Dr. Montoya reported that Foote exhibited slightly limited motion in the cervical spine, but no atrophy or weakness. On March 14, 1988, Dr. Montoya reported that Foote had slight diminution of range of motion of the cervical spine. On March 30, 1988, an X-ray showed degenerative joint disease affecting the cervical vertebrae.

On May 18, 1988, Dr. Fairuz Matuk, a neurosurgeon, reported that Foote was taking no medications, and had no abnormalities apart from the cervical condition. Dr. Matuk concluded that Foote had "no motor deficit" and "subjective sensory deficit that does not conform to a dermatomal pattern". On June 17, 1988, Dr. Osmon (who began treating Foote in April 1987) opined that Foote's former job involving hoisting bags of wet laundry had contributed to her degenerative disc disease and cervical abnormalities. On July 22, 1988, Dr. Matuk reported that Foote had "mild" weakness in the left arm and wrist, but found no significant change from his prior examination.

In a September 2, 1988, letter to Foote's attorney, Dr. Matuk deferred to Dr. Montoya

regarding whether Foote's former job contributed to her cervical problems.

On October 14, 1988, Foote entered another hospital, Richland Memorial Hospital, for a trial cervical traction for her left shoulder and arm pain. Dr. Jack Smith diagnosed chronic neck, left shoulder and arm pain. Appellant testified that she was hospitalized and placed in traction in South Carolina for ten days in October 1988. (T. 43) On November 29, 1988, Dr. Smith reported that X-rays of Foote revealed a "very slight" epidural depression at C5–6 on the left, but he did not recommend another operation. Between late 1988 and early 1990, Foote saw no doctors. Foote claims to have been calling in for prescriptions, and that Dr. Montoya was out of the country during that time.

On July 5, 1990, Dr. Robert J. Oliva reported that Foote experienced decreased strength in the left leg and arm, and took Tylenol # 3 for pain. On November 26, 1990, Dr. H.D. Brewer prepared a General Medical Examination Report for the Florida Dept. of Labor and Employment Security Division of Vocational Rehabilitation. He diagnosed degenerative disc disease in the cervical spine, and opined that Appellant would be able to work. On December 12, 1990, Dr. Steven A. Field found that Foote had some tenderness adjacent to her surgical scar, but a full range of motion without any real pain. He stated that Foote was employable at "some type of sedentary job in which she doesn't have to do any heavy lifting".

On April 3, 1991, Dr. Donald L. Mellman (a neurosurgeon) found some weakness in areas of the left upper extremity.

### EVALUATION OF APPELLANT'S CLAIM BY THE ALJ

At her administrative hearing on August 6, 1991, Foote testified that she was 46 years old, 5'6" tall and 140 pounds. She stated that she took Tylenol # 3 every six hours (T. 35) and 400 mg of Motrin as needed (T. 40). She is able to sit for 15 minutes or stand for 30 minutes before experiencing muscle spasms (T. 35), and is able to carry objects weighing less than 10 pounds. She has problems putting her bra on (T. 37) and she stated that she experienced constant, but varying, pain in the back of her neck and in her arm. She has problems concentrating

(T. 41). Foote is a high school graduate, and has worked in a laundromat and a sewing factory.

In evaluating a claim for disability benefits, an ALJ must evaluate the claimant's case with respect to five criteria, as set forth in 20 C.F.R. § 404.1520:

1. Is the individual performing substantial gainful activity
2. Does she have a severe impairment
3. Does she have a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1
4. Can she perform her past relevant work
5. Based on her age, education, and work experience, can she perform other work of the sort found in the national economy

Foote was found to meet the first four criteria for receiving benefits, specifically:

1. No gainful activity since February 9, 1987
2. Yes, severe musculoskeletal weakness due to degenerative disc disease of the cervical spine, status post C5–6 laminectomy with decompression, ...
3. None of the impairments listed in or medically equal to "the Listings"
4. She retained the residual functional capacity to perform a full range of sedentary work, but that her past relevant work in an industrial laundry exceeded the demands of the sedentary work classification. The ALJ noted Dr. Smith's November 29, 1988 opinion. The ALJ stated that Foote's complaints of disabling pain and other limitations were not fully credible in light of the medical evidence and her evidenced residual functional capacity.

As to the fifth element of the evaluation, the ALJ found that the appropriate regulation, 20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 2, directed a conclusion that Foote was "not disabled".

The ALJ found that Appellant "has severe musculoskeletal weakness due to degenerative disc disease of the cervical spine, status

post C5–6 laminectomy with decompression and foraminotomy and resultant spondylosis, without associated neurological deficit." The ALJ indicated that this condition would prevent the Appellant from performing work requiring lifting and carrying in excess of 10 pounds repetitively or requiring the use of the upper extremities for strenuous pushing or pulling repetitively. He concluded that she could not return to work in an industrial laundry, but that she retained the ability to perform the full range of sedentary work.

### REVIEW BY THE DISTRICT COURT

On March 8, 1993, the district court adopted the Magistrate's Report & Recommendation and affirmed the ALJ's decision. This court must review the lower court's decision and determine whether that conclusion, as a whole, was supported by substantial evidence in the record. 42 U.S.C. 405(g).

The Magistrate cited the findings of Dr. Field (from December 1990), the only doctor to assess Foote's residual functional capacity, and Foote's own testimony that she could lift some objects, and that she walked around a mobile home park for exercise. The court found that Foote was represented at her hearing (by a non-attorney disability claims consultant), and that the ALJ properly considered Foote's allegations of disabling pain, and set forth sufficient reasoning leading to the ultimate conclusion that Foote could perform a full range of sedentary work.

### THE PARTIES' POSITIONS

Appellant Foote contends that the ALJ's exclusive use of the grids to arrive at a conclusion that she was not disabled was inappropriate because her pain significantly compromised her ability to perform a full range of sedentary work and, under such circumstances, a vocational expert should have been utilized. Appellant further argues that she has a clinically established underlying medical condition: cervical spondylosis particularly at C5–6. This claim is supported by medical evidence of limited range of motion, diminished sensation to pinprick in the left arm/hand, decreased reflexes in the left arm, muscle spasm, abnormal thermogram, muscle or motor weakness and/or decreased grip strength. That overall condition, claimant argues, precluded application of the grids

to her case. The ALJ did not properly consider Foote's subjective complaints of pain, nor did the ALJ make specific findings of credibility. The ALJ also neglected to prove other work that Foote could perform.

The Secretary, in response, contends that Appellant had the residual functional capacity to perform a full range of sedentary work—and therefore the ALJ did not err in applying the grids. Nor did Appellant establish the existence of a nonexertional impairment that would have precluded application of the grids. The Secretary also contends that the ALJ properly considered the evidence, and that specific findings of credibility were not required.

### DISCUSSION

We find the most merit in Appellant's second argument, as to the necessity of testimony from a vocational expert, and therefore immediately proceed to that discussion. Her first argument, regarding the ALJ's failure to make specific credibility findings and to fully consider the medical evidence, will then be briefly addressed.

 The ALJ has the obligation of developing a full and fair record regarding the vocational opportunities available to a claimant. *Allen v. Sullivan,* 880 F.2d 1200, 1201 (11th Cir.1989); *Welch v. Bowen,* 854 F.2d 436, 440 (11th Cir.1988). This burden may sometimes be met through exclusive reliance on the grids. However, " 'exclusive reliance on the grids is not appropriate either when the claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills.' " *Walker v. Bowen,* 826 F.2d 996, 1002–03 (11th Cir.1987) (quoting *Francis v. Heckler,* 749 F.2d 1562, 1566 (11th Cir.1985).

 Review of the Secretary's application of legal principles is plenary. *Swindle v. Sullivan,* 914 F.2d 222, 225 (11th Cir.1990). When the proper legal standards have not been applied, the proper course is not remand, but reversal. *Lamb v. Bowen,* 847 F.2d 698, 701 (11th Cir.1988).

**I. Did the ALJ prove "other work" that Foote could do**

Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do. *Gibson v. Heckler,* 762 F.2d 1516 (11th Cir.1985). The Secretary bears the burden of establishing that Appellant, who could not perform her past work, could perform alternative work in the national economy. Although this burden can sometimes be met through straightforward application of the Medical–Vocational Guidelines (the "grids"), the regulations regarding the implementation of the grids caution that they are only applicable under certain conditions. For example, the claimant must suffer primarily from an exertional impairment, without significant nonexertional factors. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e). Exclusive reliance on the grids is appropriate in cases involving only exertional impairments (impairments which place limits on an individual's ability to meet job strength requirements). *Heckler v. Campbell,* 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983). Pain is a nonexertional impairment. *Walker,* 826 F.2d at 1003. Exclusive reliance on the grids is inappropriate when a claimant has a nonexertional impairment that significantly limits the claimant's basic work activities. *Swindle v. Sullivan,* 914 F.2d 222, 226 (11th Cir.1990) (ALJ improperly discounted claimant's testimony about pain and dizziness; on remand, if such pain is found to significantly limit claimant's activities, the court should use a vocational expert).

If the grids are inapplicable, the Secretary must seek expert vocational testimony. Normally, when nonexertional limitations are alleged, "the preferred method of demonstrating that the claimant can perform specific work is through the testimony of a vocational expert." *MacGregor v. Bowen,* 786 F.2d 1050, 1054 (11th Cir.1986) (affirming district court reversal of ALJ who applied grids). " 'It is only when the claimant can clearly do unlimited types of light work, . . . that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.' " *Allen v. Sullivan,* 880 F.2d 1200, 1202 (11th Cir.1989) (quoting *Ferguson v. Schweiker,* 641 F.2d 243, 248 (5th Cir. Unit A, March 1981)). "The burden of showing by substantial evidence that a person who can no longer perform his former job can engage in other substantial gainful activity is in almost all cases satisfied only through the use of vocational expert testimony." *Chester v. Bowen,* 792 F.2d 129, 132 (11th Cir.1986) (also quoting *Ferguson v. Schweiker* ).

The ALJ found that Foote could perform a full range of work at the sedentary level, and discredited Foote's testimony as to disabling nonexertional pain. Foote argues that the allegedly diminished grip strength in her left hand renders her lacking in "bilateral manual dexterity", which is a necessary element in the performance of the full range of sedentary work, and should therefore preclude application of the grids in her case. "Sedentary work" is defined in the regulations at 20 C.F.R. § 404.1567(a) as work which involves

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

The ALJ must " 'make a specific finding as to whether the nonexertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.' " *Johnson v. Shalala,* 1993 U.S.Dist. LEXIS 8553 (S.D.Ala. May 27, 1993) (quoting *Welch v. Bowen,* 854 F.2d 436, 439 (11th Cir.1988)).

Here, Appellant's testimony and the majority of the reports of treating and examining doctors all show a continuing problem with the use of her left hand and arm, including limitation of motion, diminished sensation, abnormal reflexes, weakness and pain. The regulations accompanying the grids state that the "inability to perform jobs requiring bilateral manual dexterity significantly compromises" the range of sedentary work a claimant can perform. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 201.00(h). In So-

cial Security Ruling 83–12, the Secretary explained that "most unskilled sedentary jobs require good use of both hands." While this statement was made in the context of a discussion of individuals who have lost major use of an upper extremity, the statement is applicable to Appellant's situation. Her prior work in a commercial laundry is considered to be unskilled labor. Since her prior work was unskilled, the claimant would normally be expected to perform only that category of work within any given exertional category. As there has been no dispute that Appellant is limited to sedentary work, and as such work must be unskilled because of Appellant's prior work history, the Secretary's statement that most unskilled sedentary jobs require good use of both hands is directly relevant. Appellant has limited use of her left hand. The ALJ erred in his exclusive reliance on the grids. This Court has previously held that limitations in manual dexterity and grip strength in one hand would significantly limit a person's ability to adapt to other work, and should therefore preclude exclusive reliance on the grids. *Patterson v. Bowen,* 799 F.2d 1455, 1459 (11th Cir.1986).

In her brief to the District Court, *Memorandum in Support of the Secretary's Decision,* Ex. 7, the Secretary acknowledged that "bilateral manual dexterity is a necessary element in the performance of the full range of sedentary work." 20 C.F.R. Part 404, Subpart P, Appendix 2, § 201.00(h). The Secretary contends, however, that grip strength is not a necessary element in the performance of sedentary work.

Dr. Field's report does not entirely support the ALJ's conclusion that the Appellant can do a "full range" of sedentary work. Dr. Field stated that:

> ... she very well might require further surgery to relieve her discomfort and pain. In the meantime, I would find that this patient is employable at some type of sedentary job in which she doesn't have to do any heavy lifting. She is right hand dominate and therefore, can use this hand and only needs the left hand for balance.

T. 197.

The conclusion that the failure to use a vocational expert was error seems warranted. This compelling need in view of the pain complaints will be treated hereafter.

## II. Did the ALJ properly consider the evidence

The Social Security Act mandates that "findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is defined as more than a scintilla, i.e., evidence that must do more than create a suspicion of the existence of the fact to be established, *Walden v. Schweiker,* 672 F.2d 835, 838 (11th Cir.1982), and such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Chester v. Bowen,* 792 F.2d 129, 131 (11th Cir.1986). The court should not reweigh the evidence. *Sewell v. Bowen,* 792 F.2d 1065, 1067 (11th Cir.1986).

### A. Subjective complaints of pain

The Secretary must consider a claimant's subjective testimony of pain if she finds evidence of an underlying medical condition, and either (1) objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain. *Mason v. Bowen,* 791 F.2d 1460, 1462 (11th Cir.1986); *Landry v. Heckler,* 782 F.2d 1551, 1553 (11th Cir.1986). *Holt v. Sullivan,* 921 F.2d 1221, 1223 (11th Cir.1991), requires that an ALJ apply a three part "pain standard" when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

921 F.2d at 1223. A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability. *Holt v. Sullivan*, supra at page 1223; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir.1987).

▐ Indeed, in certain situations, pain alone can be disabling, even when its existence is unsupported by objective evidence. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir.1992).

A claimant may establish that her pain is disabling through objective medical evidence that an underlying medical condition exists that could reasonably be expected to produce the pain. 20 C.F.R. § 404.1529 provides that once such an impairment is established, all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability.

The ALJ found, *inter alia*, as noted by the district court, that:

> The medical evidence does not reflect any neurologic deficits. The claimant's reported activities of daily living do not suggest the presence of a condition which could reasonably be expected to produce disabling pain.

Magistrate's R & R, p. 10. The Appeals Council stated,

> The decision shows that the Administrative Law Judge's evaluation as to the credibility of your subjective complaints is consistent with that ruling. In addition to assessing the objective medical findings the Administrative Law Judge cited the use of medications, daily activities, physician opinions, and your conservative treatment since surgery in July 1987.

Magistrate's R & R, p. 10.

The ALJ stated (T. 17–18) that:

> In finding the claimant able to perform at least a full range of sedentary level work, the Administrative Law Judge has also considered the claimant's subjective complaints with regard to pain. The claimant reported taking Tylenol No. 3 and Motrin as needed for relief of pain. Neither the claimant's testimony [n]or the evidence of record would indicate that these pain relievers are ineffective in relieving the

claimant's symptoms with regard to pain. The medical evidence does not reflect any neurologic deficits. The claimant's reported activities of daily living do not suggest the presence of a condition which could reasonably be expected to produce disabling pain. She stated that she can lift and carry objects weighing up to 10 pounds and does perform light household chores, including cooking. She reported driving and shopping for needed household items. She reported walking around the mobile home park where she lives for exercise. She reported the ability to care for her own personal needs without assistance including bathing, feeding and dressing. Such activities are found to be consistent with the performance of at least a full range of sedentary work.

▐ Here, the medical evidence indicates that claimant did have a medical condition that could reasonably be expected to cause pain. This pain could reasonably be related to the medical condition that was clearly established. Appellant consistently complained of pain to her treating doctors. The ALJ's conclusion that Appellant's pain was not so disabling as to have significantly affected her residual functional capacity is not supported by substantial evidence in the record. His citation to Appellant's testimony as to her daily activities is not sufficient support for such conclusions. Appellant testified at her sixteen (16) minute administrative hearing that she could still cook and do the shopping. (T. 37) However, there was other testimony indicating that appellant's daily activities have been significantly affected. For example, her pain is so great that she has trouble putting on her bra. (T. 37) This Court must consider "the entire record and take account of the evidence in the record which detracts from the evidence relied on by the [Secretary]." *Parker v. Bowen*, 793 F.2d 1177 (11th Cir.1986) (quoting *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

### B. Were credibility findings made

▐ If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for

doing so. Failure to articulate the reasons for discrediting subjective pain testimony requires, as a matter of law, that the testimony be accepted as true. *Cannon v. Bowen,* 858 F.2d 1541, 1545 (11th Cir.1988). The ALJ did not make a specific findings as to Appellant's credibility. He appears to have credited her testimony about her daily activities, yet discredited her testimony as to the extent of her disabling pain. "[W]here proof of a disability is based upon subjective evidence and a credibility determination is, therefore, a critical factor in the Secretary's decision, the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *id.* at 1255. We cannot say that the implication as to Appellant's credibility is obvious from the ALJ's report. "Although this circuit does not require an explicit finding as to credibility, ... the implication must be obvious to the reviewing court." *Tieniber v. Heckler,* 720 F.2d 1251, 1255 (11th Cir.1983). The missing (or implicit) credibility determination is vital to our review of the ALJ's decision because a claimant's testimony typically conveys more than a simple statement as to the subjective pain she suffers. Appellant testified that she is unable to sit for long periods of time, has numbness and loss of grip strength in her left hand—which causes her to drop things, and frequent headaches interfering with concentration. These and other complaints, including pain, provide the basis for assessing the overall functional capacity of the individual. If these complaints are rejected, the reasons should be expressed. In this setting, the testimony of a vocational expert would have been important in determining the claimant's realistic ability to find work which she is capable of performing. In the case before us, the ALJ made no specific finding as to Appellant's credibility. The ALJ failed to identify any inconsistencies between Appellant's statements to her physicians and those she has made to the Secretary, through her application for disability benefits and during her administrative hearing; and no vocational expert was called.

The ALJ found that:

The medical evidence establishes that while the claimant has an impairment which could be expected to produce some discomfort on attempts at strenuous exer-

tion, such condition is not one that would preclude engagement in all work activity. T. 19.

▮▮▮ A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court. *MacGregor v. Bowen,* 786 F.2d 1050, 1054 (11th Cir.1986). A lack of an explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. *Smallwood v. Schweiker,* 681 F.2d 1349, 1352 (11th Cir.1982). While an adequate credibility finding need not cite "particular phrases or formulations ... broad findings that [a claimant] lacked credibility and could return to her past work alone are not enough to enable us to conclude that [the ALJ] considered her medical condition as a whole." *Jamison v. Bowen,* 814 F.2d 585, 588–90 (11th Cir.1987). If proof of disability is based upon subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Tieniber v. Heckler,* 720 F.2d 1251, 1255 (11th Cir.1983) (ALJ did not specifically address testimony by claimant and her daughter about claimant's pain). Explicit credibility findings are "necessary and crucial where subjective pain is an issue." *Walden v. Schweiker,* 672 F.2d 835, 839 (11th Cir.1982).

## CONCLUSION

Absent testimony from a vocational expert, the ALJ's conclusion that Appellant's pain limitations do not significantly compromise her ability to perform a full range of sedentary work is not supported by substantial evidence. Without bilateral manual dexterity, and evidence of other non-exertional impairment, the Secretary's own regulation, ruling, and *Patterson v. Bowen,* all dictate that the exclusive use of the Grids is inappropriate. Because the ALJ did not use a vocational expert to establish evidence of "other work" Appellant can perform, this case must be remanded for such determination. The Secretary has not complied with her burden of developing a full and fair record with substantial evidence showing that there were

specific jobs in the national economy that Appellant could perform. The judgment of the district court is VACATED. On receipt of our mandate, the district court shall RE-MAND the case to the Secretary for further proceedings consistent with this opinion.