[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-16423
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 18, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-62029-CV-RLD

VINCENT CAVARRA, SR.,

Plaintiff-Appellant,

versus

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 18, 2010)

Before TJOFLAT, HULL and ANDERSON, Circuit Judges.

PER CURIAM:

Vincent Cavarra appeals the judgment of the district court affirming the

Social Security Commissioner's denial of disability insurance benefits, 42 U.S.C. § 405(g), and Supplemental Security Income, 42 U.S.C. § 1383(c)(3). Cararra's claim for benefits stems from hernia surgery Cavarra had in May 1999. As a result of the surgery, an entrapment and neuralgia of the right ilioinguinal nerve developed—causing a severe or stabbing pain in the distribution of the ilioinguinal nerve that supplies the skin of the upper thigh and scrotum—which, according to his testimony, has left him with constant, severe pain, such that he can no longer be gainfully employed.

In this appeal, Cavarra argues that the district court's judgment should be set aside and the case remanded to the Commissioner on two grounds: (1) the finding of the Administrative Law Judge ("ALJ") that good cause existed for failing to accord a treating physician's opinion controlling weight is not supported by substantial evidence; and (2) ALJ erred in determining that Cavarra's subjective complaints of pain were not entirely credible. We conclude that the ALJ failed to articulate good cause for discrediting the residual functional capacity determination of Cavarra's treating physician, Dr. Jose Torres, who opined that Cavarra could not perform sedentary work. Moreover, because substantial evidence does not support the ALJ's rejection of Dr. Torres's opinion, the ALJ erred discounting Cavarra's subjective complaints of pain.

## I.

We review the ALJ's decision "to determine if it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quotation omitted). "Substantial evidence is defined as more than a scintilla, i.e., evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citations omitted).

The social security regulations establish a five-step, sequential evaluation process to determine disability for both SSI and disability benefits claims. *See* 20 C.F.R. §§ 404.1520, 416.920. The ALJ must evaluate: (1) whether the claimant engaged in substantial gainful employment; (2) whether the claimant has a severe impairment; (3) whether the severe impairment meets or equals an impairment in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; or (4) whether the claimant has the residual functional capacity to perform her past relevant work; and (5) whether, in light of the claimant's residual functional capacity, age, education and work experience, there are other jobs the claimant can perform in the national economy. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

A.

A treating physician's opinion "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford*, 363 F.3d at 1159 (quotation omitted); *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). "'Good cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1240-41. Where an ALJ articulates specific reasons for failing to accord the opinion of a treating physician controlling weight and those reasons are supported by substantial evidence, we accept the ALJ's rejection of the treating physician's opinion. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the: (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence and explanation supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the pertinent medical issues; and (6) other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). A treating physician's opinion is generally

entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984).

The ALJ said that Cavarra retained a residual functional capacity to perform medium work, finding that Cavarra could lift up to 50 pounds and that he could sit for about six hours and stand or walk for about six hours during an eight-hour work day. With the help of a vocational expert, the ALJ determined that Cavarra could return to his past relevant sedentary work as a telemarketer or office manager. Notably, while the ALJ found that Cavarra could lift up to fifty pounds, sedentary work requires lifting only ten pounds and involves sitting most of the day. *See* 20 C.F.R. 404.1567(a); *see also Kelley v. Apfel*, 185 F.3d 1211, 1213 n.2 (11th Cir. 1999) ("'occasionally' means occurring from very little up to one-third of the time, and that 'periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday.'" (quoting Social Security Rule 83-10)). But, by limiting Cavarra to no more than three hours sitting a day, Dr. Torres's January 2005 multiple impairment questionnaire effectively states that Cavarra is incapable of performing even sedentary work.

The ALJ concluded that he could not assign controlling weight to Dr. Torres's January 2005 assessment that Cavarra was incapable of even sedentary

work because Dr. Torres's assessment was inconsistent with his own progress notes and was based primarily on Cavarra's subjective complaints. However, Dr. Torres's opinion was not inconsistent with his own medical records, which evidence fluctuations in Cavarra's periodic reports of his pain levels and responses to medications.

Dr. Torres's assessment is consistent with the opinions of Dr. William W. Cheatham and Dr. Douglas Neimand as well as Cavarra's repeated reports of severe pain. Dr. Torres's reliance on Cavarra's subjective pain complaints also does not render his opinion unreliable, as we indicate below.

The ALJ also emphasized that Cavarra's daily activities, including performing basic household chores, cooking, driving, and attending church, were inconsistent with Dr. Torres's assessment that Cavarra could not perform sedentary work. Yet, these somewhat minimal daily functions are not comparable to typical work activities. *See* 20 C.F.R. § 416.921(b) (stating that typical basic work activities refer to "the abilities and aptitudes necessary to do most jobs," including among other things "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling."). Moreover, the ALJ's description mischaracterizes Cavarra's testimony. Cavarra testified that that he cooked and cleaned for himself, but that he had difficulty performing these tasks because he had basically lost

6

motion in his right side.  At one point, the ALJ acknowledged Cavarra's testimony that he had trouble in cooking and cleaning for himself.  But when he discounted Cavarra's credibility and found that he was capable of doing medium work, the ALJ failed to consider or evaluate Cavarra's testimony that his neighbors and children had to help him throw out garbage, go grocery shopping, and do laundry.  The ALJ also stated that Cavarra "socialize[d] with friends and family," but, Cavarra testified that, besides going to church, he did not participate in any social activities outside his home.  Finally, the ALJ did not explain how the ability to perform basic household chores with difficulty qualified Cavarra to perform medium work, which "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." *See* 20 C.F.R. § 404.1567(c).

No medical provider or consultant offered an opinion that conflicted with Dr. Torres's assessment or deemed Cavarra's subjective complaints to be unfounded.  In sum, the ALJ failed to articulate good cause for discrediting Dr. Torres's opinions.

### B.

We apply a three-part pain standard when a claimant seeks to establish disability through his own testimony regarding pain or other subjective symptoms.

*Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). The pain standard requires:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Id.* "A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). In certain situations, pain alone can be disabling, even when its existence is unsupported by objective evidence. *Id.*

"If the ALJ decides not to credit a claimant's testimony as to [his] pain, he must articulate explicit and adequate reasons for doing so." *Foote*, 67 F.3d at 1561-62. "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Id.* at 1562.

Here, as the ALJ observed, the medical evidence indicates that Cavarra did have a medical condition that could reasonably be expected to cause pain, and Cavarra consistently complained of pain to his treating doctors. But the ALJ concluded that Cavarra's statements concerning the intensity, persistence, and limiting effects of his pain were not entirely credible. Besides the lack of objective

8

medical evidence in the record, the ALJ based his credibility determination upon Cavarra's ability to live on his own, to perform basic household chores, and Cavarra's statement that he took 32 pills a day. This credibility determination was not supported by substantial evidence.

As an initial matter, given the nature of Cavarra's condition, which could not be easily seen or examined, it is not dispositive that the record lacked objective evidence, for, in certain situations, pain alone can be disabling, even when its existence is unsupported by objective evidence. *Foote*, 67 F.3d at 1561.

The ALJ first reasoned that "[d]espite having continuous pain at a '9' or '10' on the pain scale, [Cavarra] is able to live on his own, perform basic household chores, cook, drive, attend church, and socialize with friends and family." But, as discussed above, the ALJ mischaracterized Cavarra's testimony about his performance of household chores. Contrary to the ALJ's reasoning, Cavarra's complaints of disabling pain are supported by his testimony; he said that neighbors and friends had to help him with the garbage, shopping, and laundry, and that he performed basic chores with difficulty because he had lost motion in his right side.

Also, the ALJ was simply wrong in finding that Cavarra's statement that he takes 32 pills a day was not supported by the record. The medical expert testified that Cavarra had Peyronie's disease which required him to take between 24-32 pills

a day in addition to his other pain medication.

Moreover, the medical expert testified that the only thing that would call Cavarra's credibility of his pain complaints into question would be Dr. Schultz's belief that Cavarra's pain complaints before his surgery in 1999 were somewhat out of proportion to what he would expect. On the other hand, the credibility of Cavarra's complaints is bolstered by evidence that he made numerous visits to various doctors over the course of several years, underwent MRIs and x-rays, attempted numerous methods of relieving the pain, and was prescribed numerous medications.

After stating that Cavarra's testimony was not "entirely credible" or "wholly credible," the ALJ completely discounted Cavarra's subjective complaints of pain when he concluded that Cavarra was capable of performing the full range of medium work. The ALJ's credibility determination is not supported by substantial evidence and therefore must be set aside.

For the foregoing reasons, the judgment of the district court is vacated and the case is remanded to the district court with the instruction that it vacate the Commissioner's decision and remand the case to the Commissioner for further proceedings not inconsistent with this opinion.

VACATED and REMANDED, with instructions.