[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-14849

_____

D.C. Docket No. 8:11-cv-01524-SPC

MICHAEL GRIFFIN,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(March 19, 2014)

Before MARTIN and HILL, Circuit Judges, and HUCK,[*] District Judge.

MARTIN, Circuit Judge:

---

[*] Honorable Paul C. Huck, United States District Judge for the Southern District of Florida, sitting by designation.

Michael Griffin appeals the denial of his application for a period of Social Security disability and disability insurance benefits by an administrative law judge (ALJ).  Mr. Griffin argues three issues on appeal, which we address in turn.  After a careful review of the parties' briefs and the relevant precedent, and with the benefit of oral argument, we affirm the ALJ's denial of benefits.

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Mr. Griffin was injured after his car was rear ended and totaled in 1996.  Mr. Griffin saw several doctors after this accident.  He began to see Dr. Sharad Lakdawala in early 1998.  Dr. Lakdawala was a mental health professional.  The visits with Dr. Lakdawala were "fifteen-minute medication adjustments."  At a visit in July 1998, Mr. Griffin complained to Dr. Lakdawala of depression and difficulty doing anything because of pain and tinnitus.  Similarly, in April 2001, Mr. Griffin told Dr. Lakdawala of depression, ringing in his ears, and inability to sleep.  During 2002, Mr. Griffin continued to complain about back pain and ringing in his ears.

Although in 2003 Dr. Lakdawala noted that Mr. Griffin was "doing well," he also noted continued problems with back pain, depression, and ringing in Mr. Griffin's ears.  By November 2003, Dr. Lakdawala noted that Mr. Griffin was sleeping better despite the ringing in his ears.  Mr. Griffin continued to see Dr. Lakdawala in 2004 and 2005, and though the doctor considered Mr. Griffin's

2

anxiety and depression generally well controlled, he continued to note back pain and ringing in Mr. Griffin's ears. Into 2006, Mr. Griffin reported doing "extremely well," and Dr. Lakdawala noted that his medication controlled his mental symptoms. Three "State agency psychological consultants" reviewing Dr. Lakdawala's records in 2003, 2008, and 2009 all agreed that Mr. Griffin did not have a severe mental impairment during the relevant period.

Mr. Griffin also had appointments with Dr. Robert Martinez and Dr. R. Krishna Moorthy. Mr. Griffin saw Dr. Martinez, a neurologist, four times between 1999 and 2006. At the visit in March 2002, Mr. Griffin complained of headaches, neck and back pain, ringing in the ears, depression, and trouble sleeping. Mr. Griffin began seeing Dr. Moorthy shortly after the accident, including a visit in April 2003 where an MRI revealed a "lateral protrusion at the C3 to C4 level," but Dr. Moorthy noted no neurological abnormalities, no paravertebral muscle spasm, no motor deficits, and no abnormal sensory, motor, or reflex responses.

In April 1998, Mr. Griffin filed an application for a period of disability and disability insurance benefits. In March 2001, in a decision denying Mr. Griffin's 1998 application, an ALJ found that Mr. Griffin's tinnitus "appears mild." The 2001 decision found that though Mr. Griffin could not "perform any of his past relevant work" as an insurance manager, he was "capable of performing a significant range of sedentary work." Therefore, the ALJ concluded that Mr.

Griffin "is not disabled within the meaning of the Social Security Act."  Mr. Griffin did not appeal that March 2001 decision.

On May 20, 2008, Mr. Griffin filed his second application for a period of disability and disability insurance benefits, which is the one at issue in this litigation.  In this application, Mr. Griffin alleged he became unable to work on December 31, 2002.  He was last insured for disability benefits on June 30, 2004 and so was required to demonstrate a disability on or before that date to qualify for Social Security disability insurance benefits.  His claim was denied at the initial level and at reconsideration, and Mr. Griffin requested a hearing before an ALJ.

The ALJ decided Mr. Griffin's claim in 2010.  The ALJ found that Mr. Griffin had the severe impairment of degenerative disc disease and determined his depression and anxiety were not severe, but did not discuss whether tinnitus was a severe impairment as well.  The ALJ also found that Mr. Griffin had "the residual functional capacity to perform [a] full range of light work," and "was capable of performing past relevant work as an insurance manager" as well as "other jobs existing in the national economy."  The ALJ found some of Mr. Griffin's statements about his condition not entirely credible.  At the ALJ hearing, Mr. Griffin noted he earned approximately $32,000 in 1999, but was unsure of the source.  He first stated it was alimony, but when told that alimony is generally not considered earned income, he then said it was "very likely" he had received

4

disability benefits that year.  And the ALJ stated that Mr. Griffin "[a]t most [had] visited Dr. Moorthy once and Dr. Lakdawal [sic] once" between the alleged onset date and the date last insured.  Ultimately, the ALJ found Mr. Griffin was not disabled.  After the ALJ decision, Mr. Griffin asked for review by the Appeals Council, which was denied.

Mr. Griffin then appealed to the U.S. District Court for the Middle District of Florida, which rejected the three issues he raised.  First, the District Court rejected the argument that the ALJ should have included Mr. Griffin's tinnitus in the severe impairment finding, because Mr. Griffin failed to demonstrate his tinnitus was a significant limitation on his ability to perform basic work activities.  Even if Mr. Griffin could have demonstrated it was a significant limitation, the District Court found that the ALJ committed only harmless error, because the ALJ found a different severe impairment.  Second, the District Court agreed that substantial evidence supported the ALJ's credibility determination because Mr. Griffin sought only "sporadic treatment," and because of his statements about his ability to work after the accident.  Finally, the District Court rejected the argument that the 2001 ALJ decision, which found Mr. Griffin could not do past relevant work and which the ALJ in the 2010 decision did not even mention, should have res judicata effect.  Those are the same three issues presented to this Court.

## II.  STANDARD OF REVIEW

5

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). This Court may not reweigh evidence and decide facts anew, and must defer to the ALJ's decision if it is supported by substantial evidence. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Substantial evidence must do more than create a suspicion of the existence of a fact; it is evidence that a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). If the Commissioner's decision is supported by substantial evidence it should be affirmed, even if this Court would have reached a contrary result. Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004).

## III.  SEVERE IMPAIRMENT

Mr. Griffin first contends that substantial evidence does not support the ALJ's failure to find that his tinnitus constituted a severe impairment. In order to determine whether a claimant is disabled, the Social Security Administration (SSA) applies a five-step sequential analysis. 20 C.F.R. § 404.1520(a). This process includes a determination of whether the claimant:  (1) is presently engaged in substantial gainful activity; (2) has a severe and medically determinable physical or mental impairment; (3) has such an impairment that meets or equals one of the listed impairments and meets the duration requirements; (4) can perform his past relevant work, in light of his residual capacity; and (5) can make an adjustment to

other work, in light of his residual functional capacity, age, education, and work experience.  Id. § 404.1520(a)(4).

A claimant is not disabled unless he has a severe impairment.  Id. § 404.1520(a)(4)(ii), (c).  A severe impairment is an impairment or combination thereof that significantly limits the claimant's physical or mental ability to do basic work activities.  Id. § 404.1520(c).  The determination of whether the claimant suffers from a severe impairment acts as a filter.  Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).  Thus, while a claim is denied if the claimant does not suffer from a severe impairment, the finding of any severe impairment, regardless of whether it qualifies as a disability or results from a single impairment or combination thereof, is sufficient to satisfy the second step of the SSA's sequential analysis.  Id.  Nonetheless, beyond the second step, the ALJ must consider the entirety of the claimant's limitations, regardless of whether they are individually disabling.  See id.; Bowen v. Heckler, 748 F.2d 629, 635 (11th Cir. 1984).

The ALJ found that Mr. Griffin suffered from the severe impairment of degenerative disc disease, which was all that the second step of the SSA's disability analysis required.  See Jamison, 814 F.2d at 588.  The record also demonstrates that the ALJ considered Mr. Griffin's tinnitus at subsequent steps. The ALJ considered Mr. Griffin's tinnitus at the third step by finding that Mr. Griffin did not have an impairment, or combination thereof, that met or medically

equaled one of the listed impairments.  See Jones v. Dep't of Health & Human Servs., 941 F.2d 1529, 1533 (11th Cir. 1991) (noting a simple expression of the ALJ's consideration of the combination of impairments constitutes a sufficient statement of such findings).

Likewise, in determining Mr. Griffin's residual functional capacity, the ALJ expressly acknowledged that Mr. Griffin's statements regarding the limiting effects of his impairments were not credible.  The record demonstrates that, even if the ALJ should have found that Mr. Griffin's tinnitus was a severe impairment, the ALJ fulfilled his responsibility to consider Mr. Griffin's tinnitus in the remaining steps of his disability analysis.  See Jamison, 814 F.2d at 588; Heckler, 748 F.2d at 635; 20 C.F.R. § 404.1520(a)(4).  Thus, any error that the ALJ made in failing to find that Mr. Griffin's tinnitus was a severe impairment was harmless.  See Jamison, 814 F.2d at 588; Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983) (applying the harmless error doctrine to a Social Security appeal).

## IV.  CREDIBILITY

Mr. Griffin next argues that the ALJ's credibility finding was not clearly articulated or supported by substantial evidence.  Where a claimant attempts to demonstrate a disability through his own testimony of pain or other subjective symptoms, there must be evidence of an underlying medical condition.  Dyer, 395 F.3d at 1210.  If that threshold is met, then there must be either objective medical

evidence that confirms the severity of the alleged pain or symptoms arising from the underlying medical condition, or evidence that the objectively determined medical condition can reasonably be expected to give rise to the alleged pain.  Id.

If the ALJ decides not to credit the claimant's testimony as to his subjective symptoms, "he must articulate explicit and adequate reasons for doing so," or substantial supporting evidence in the record must clearly support the credibility finding.  Foote, 67 F.3d at 1561–62.  We will not disturb a clearly articulated credibility finding that is supported by substantial evidence.  Id. at 1562.  The failure to articulate reasons for discrediting a claimant's subjective testimony, however, requires that the testimony be accepted as true, and becomes grounds for remand where credibility is critical to the outcome of the case.  See id.

Based on the record before us, we cannot say that the ALJ failed to articulate the reasons for his credibility determination.  The ALJ explicitly found that, while Mr. Griffin suffered from impairments that reasonably could be expected to produce the alleged symptoms, his statements regarding the frequency, intensity, and duration of the symptoms were not credible.  In support of his credibility determination, the ALJ found that:  Mr. Griffin's statements were inconsistent with the evidence; he received limited treatment for his ailments; and his testimony conflicted with his earnings report.  Thus, the ALJ satisfied his responsibility to

9

explicitly articulate the basis for his credibility finding. See Foote, 67 F.3d at 1561–62.

Substantial evidence supports the ALJ's finding that Mr. Griffin was not credible with respect to the frequency, intensity, and duration of his symptoms. Mr. Griffin received sporadic treatment for his spinal injuries, as he only consulted with Dr. Martinez once every few years and did not consult with him at all between December 31, 2002, and June 30, 2004. Likewise, the record only contains reference to one visit with Dr. Moorthy during the relevant period. The sporadic nature of Mr. Griffin's treatments supported the ALJ's finding that his statements regarding his symptoms were not fully credible.

Substantial evidence also supports the ALJ's finding that Mr. Griffin's statements regarding his physical limitations were inconsistent with the medical record. Dr. Moorthy provided the only medical opinion that addressed the relevant time period with respect to Mr. Griffin's spine injuries, and, as the ALJ found, her findings largely fell within normal limits. In the end, Dr. Moorthy only diagnosed strains, and her opinion can be construed as inconsistent with Mr. Griffin's claims regarding the limiting effects of his injury.

Mr. Griffin's argument about his tinnitus rests largely on the ALJ's statement regarding his visits with Dr. Lakdawala. It is true that the ALJ erred in stating that Mr. Griffin only consulted with Dr. Lakdawala once during the

10

relevant time period.  However, the record demonstrates that the ALJ considered all of Dr. Lakdawala's medical notes.  Specifically, the ALJ noted that Mr. Griffin complained about insomnia, depression, and lack of motivation, which were complaints that Mr. Griffin raised on several occasions with Dr. Lakdawala.  Thus, the ALJ's mistake appears to be harmless.  See Diorio, 721 F.2d at 728.

In any event, Mr. Griffin's statements regarding any limitations from his tinnitus are not credible.  Mr. Griffin consulted with Dr. Lakdawala on seven occasions during the relevant time period, with each appointment being roughly three months apart.  Within these seven appointments, however, Mr. Griffin only complained of his tinnitus on three occasions.  Mr. Griffin reported doing well or feeling better on several occasions during the relevant time period, and Dr. Lakdawala's medical notes do not reveal any information regarding the limiting effects of Mr. Griffin's tinnitus.  Mr. Griffin's inconsistent treatment and complaints regarding his tinnitus, his reports of doing well and feeling better, and the lack of any medical evidence addressing the limiting effects of the tinnitus provides substantial evidence for the ALJ's credibility determination regarding the tinnitus.  See Dyer, 395 F.3d at 1210–12 (concluding substantial evidence supported the ALJ's determination that a claimant's subjective complaints were inconsistent with his testimony and the medical record).

11

While Mr. Griffin faults the ALJ for failing to consider his tinnitus in the credibility determination, the ALJ expressly recognized Mr. Griffin's reports of ringing in his ears in his credibility analysis. The record therefore demonstrates that that ALJ did in fact consider Mr. Griffin's tinnitus in his credibility determination. And while the ALJ's reference to that ailment was short, he was not required to refer to every piece of evidence. See Dyer, 395 F.3d at 1211 (holding the ALJ does not have to specifically refer to every piece of evidence so long as the decision is not a broad rejection that is insufficient to permit a court to conclude that the ALJ considered the claimant's medical condition as a whole).

## V.  RES JUDICATA

Finally, Mr. Griffin contends the ALJ, in formulating his residual functional capacity assessment, should have given res judicata effect to, or at least considered, a March 29, 2001 decision from the ALJ in his disability proceedings, which would have resulted in a finding of disability.

The findings and decision of the Commissioner that are made after a hearing are binding upon all individuals that were party to the hearing. 42 U.S.C. § 405(h). Under the SSA's regulations, administrative res judicata applies when the agency has made a previous final determination or decision regarding the claimant's rights on the same facts and issues. 20 C.F.R. § 404.957(c)(1); see also Cash v. Barnhart, 327 F.3d 1252, 1254–55 (11th Cir. 2003).

The ALJ properly declined to give the March 29, 2001 decision res judicata effect, as the ALJ's prior decision adjudicates a different time period, from April 30, 1996 to March 29, 2001.  The proceeding at issue here did not address this time period, and the prior decision did not finally adjudicate any issues or facts that were raised in this proceeding.  Under such circumstances, administrative res judicata does not apply.

## VI.  CONCLUSION

Substantial evidence in the record supports the ALJ's finding that Mr. Griffin could perform a full range of light work during the relevant time period, and that a significant number of jobs existed in the national economy that he could perform.  The ALJ properly articulated a credibility finding supported by substantial evidence, and was not required to give res judicata effect to the March 29, 2001 decision.  In light of the above, substantial evidence supports the conclusion that Mr. Griffin was not disabled and therefore was ineligible for a period of disability and disability insurance benefits.

**AFFIRMED.**