[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-14592
Non-Argument Calendar
_____

D.C. Docket No. 4:14-cv-00081-JRH-GRS

JENNIFER WRENE MARSHALL,

Plaintiff-Appellant,

versus

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(September 13, 2016)

Before TJOFLAT, JILL PRYOR and BLACK, Circuit Judges.

PER CURIAM:

Jennifer Marshall appeals the district court's order affirming the Commissioner's denial of Supplemental Security Income (SSI), under 42 U.S.C. § 1383(c)(3), and Child's Insurance Benefits, under 42 U.S.C. § 402(d)(1). Marshall asserts two issues on appeal,[1] which we address in turn.  After review,[2] we affirm.

## I.  DISCUSSION

### A.  ALJ's discrediting of medical opinions

Marshall argues the Administrative Law Judge (ALJ) erred by discrediting the opinions of her treating psychiatrist, Dr. Kevin Winders, and psychopharmacologist, Dr. Patrice Butterfield, and by instead crediting the evaluation of an examining psychiatrist, Dr. Thomas Pedigo.

Medical opinions are always considered when determining whether an applicant qualifies for disability benefits.  *See* 20 C.F.R. § 404.1527(b).  Factors that increase the weight of a medical opinion include, *inter alia*, whether the source

---

[1]  Marshall waived her argument the ALJ erred by failing to make explicit credibility findings as to her mother's testimony, as she did not preserve that argument by raising it in the district court.  *See Stewart v. Dept. of Health and Human Serv's*, 26 F.3d 115, 115 (11th Cir. 1994) (explaining we will not consider an issue the Social Security claimant failed to raise and preserve in the district court).  Marshall only argued the ALJ erred in discrediting her own testimony, which was consistent with her mother's testimony.  Accordingly, we decline to consider this argument on appeal.

[2]  We review the ALJ's decision for substantial evidence and its application of legal principles *de novo. Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  When the Appeals Council denies review of the ALJ's decision, we review the ALJ's decision as the Commissioner's final decision.  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).

of the opinion examined or treated the applicant, the length and nature of the relationship between the source and the applicant, whether the evidence supports the source's opinion, and the degree of consistency between the opinion and the record as a whole.  *See id.* § 404.1527(c).

An ALJ must give a treating physician's opinion "substantial or considerable weight" unless there is good cause not to do so.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011); *see also* 20 C.F.R. § 404.1527(c)(2) (providing a treating source's opinion is given controlling weight if it is supported by medically acceptable techniques and is not inconsistent with the other substantial evidence).  Good cause exists when a treating physician's opinion is not supported by the evidence, the evidence supports a different conclusion, or the treating physician's opinion is conclusory or inconsistent with his own medical records.  *Winschel*, 631 F.3d at 1179; *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (finding "good cause" where treating physician's assessment conflicted with his treatment notes and the applicant's admitted daily activities).  The ALJ must clearly articulate the reasons for disregarding a treating physician's opinion.  *Winschel*, 631 F.3d at 1179.  The ALJ must also state with particularity the weight given to different medical opinions and the reasons therefor.  *Id.*

The ALJ had "good cause" for rejecting Dr. Winders' opinions because his medical opinions that Marshall could not sustain gainful activity were inconsistent

3

with his own treatment records. *See Winschel*, 631 F.3d at 1179. Dr. Winders' statements in his impairment questionnaire that said Marshall was incapable of gainful employment and did not have good days were inconsistent with his treatment notes that indicated that Marshall was "doing fairly well," "doing okay," and "doing good." The ALJ specifically noted these inconsistencies, as well as Dr. Winders' repeatedly assessing Marshall with global assessment of functioning (GAF) scores indicating only mild limitation.

Additionally, there was "good cause" for the ALJ to reject Dr. Butterfield's opinion because the GAF scores of 40 and findings that Marshall was markedly limited were not consistent with the rest of the medical evidence, including Marshall's reported daily activities. *See id.* While Dr. Butterfield twice determined that Marshall had a GAF score of 40, Dr. Pedigo assessed Marshall a GAF score of 65, and Dr. Winders gave Marshall GAF scores between 55 and 75.[3] Therefore, the disparity in Dr. Butterfield's GAF scores and Drs. Pedigo's and Winders' consistent GAF scores showed an inconsistency between Dr. Butterfield's opinion and the rest of the record evidence. *See Winschel*, 631 F.3d at 1179. The ALJ noted that Butterfield's GAF score was inconsistent with the rest of the record evidence, as well as Marshall's self-reported activities.

_____

[3] It was not improper for the ALJ to consider the GAF scores in determining that Dr. Butterfield's opinion was inconsistent with the rest of the evidence because the ALJ was not using the GAF scores to determine whether Marshall met one of the Listings. *See* Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. at 50,764-65.

Further, it was not improper for the ALJ to discount Dr. Butterfield's opinion because he believed that Dr. Butterfield was trying to help Marshall obtain benefits, even though he did not give independent reasons for this perceived bias beyond his other "good cause" for rejecting Dr. Butterfield's opinion.  He did, however, note that Dr. Pedigo, unlike Dr. Butterfield, rendered his opinion before Marshall applied for benefits and thus could not have been biased by her application.  Marshall's argument the ALJ mischaracterized her daily activities also fails because the ALJ only noted her daily activities as one of the inconsistencies between the level of ability that Dr. Butterfield's GAF score indicated and the rest of the medical evidence, rather than relying on them solely to determine her level of impairment.  Accordingly, the ALJ did not err in discounting the opinions of Drs. Winders and Butterfield as they both were internally inconsistent and inconsistent with the rest of the evidence.

Marshall's argument the ALJ gave improper weight to Dr. Pedigo's opinion fails because the ALJ must consider medical opinions when determining whether a claimant qualifies for disability benefits.  *See* 20 C.F.R. § 404.1527(b).  First, Marshall's argument that Dr. Pedigo did not render an "opinion" because he did not address her functional capacity fails because the ALJ did not extrapolate Dr. Pedigo's opinion as to Marshall's functional capacity.  He instead relied solely on Dr. Pedigo's account of Marshall's performance during her evaluation, her

5

self-reported daily activities, GAF score of 65, and ADHD diagnosis.  Second, the

ALJ properly accorded Dr. Pedigo's opinion increased weight over other medical

evidence because he was an examining source and the ALJ discredited the only

treating sources' opinions.  *See* 20 C.F.R. § 404.1527(c).  Finally, the ALJ

correctly noted that Dr. Pedigo's opinion was the only one rendered before

Marshall applied for benefits.  Therefore, the ALJ did not err in giving weight to

Dr. Pedigo's opinion.

Accordingly, substantial evidence supported the ALJ's decisions to discount

Drs. Winders' and Butterfield's opinions and to credit Dr. Pedigo's opinion.  *See*

*Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

B.  *Severity of impairment*

Marshall further contends the ALJ erred by discrediting her testimony at the

hearing.  When a claimant attempts to establish disability through his or her own

testimony of pain or other subjective symptoms, we apply a "pain standard" test,

which requires: (1) evidence that the claimant has an underlying medical condition;

and either (2) objective medical evidence that confirms the severity of the alleged

pain arising from that condition; or (3) that the objectively determined medical

condition is of such a severity that it can be reasonably expected to give rise to the

alleged pain.  *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).  The

"pain standard" test is also applicable to other subjective symptoms.  *Dyer v.*

6

*Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The ALJ must give specific reasons for disbelieving the claimant's subjective-symptom testimony. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). We will not disturb a credibility finding that is supported by substantial evidence. *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).

Substantial evidence supported the ALJ's decision to discredit Marshall's testimony to the extent it was inconsistent with the ALJ's determination of Marshall's residual functional capacity (RFC). The ALJ explained his reasons for discounting Drs. Winders' and Butterfield's opinions, which supported Marshall's testimony but were inconsistent with their own treatment notes and the other record medical evidence. Further, the ALJ stated that Marshall's performance in Dr. Pedigo's evaluation, Dr. Pedigo's assessed GAF score of 65 and Attention Deficit Hyperactivity Disorder diagnosis, and the daily activities Marshall reported to Dr. Pedigo were not consistent with her claimed severity of disability. The ALJ noted Marshall had chosen to stop taking her medicine in favor of her art and had not followed the recommendations of her Vocational Rehabilitation counselor, even though they may have helped. The ALJ reasoned she had taken regular-education classes, with the exception of math, and had graduated high school with a diploma, indicating she had been able to maintain attention and concentrate. Finally, the ALJ explained Marshall had been able to volunteer

7

registering voters, indicating she had been able to maintain some level of social functioning, concentration, persistence, and pace.  Accordingly, substantial evidence supported the ALJ's decision to discredit Marshall's subjective-symptom testimony.  *See Holt*, 921 F.2d at 1223; *Foote*, 67 F.3d at 1562.

## II.  CONCLUSION

The district court's order affirming the Commissioner's denial of SSI and CIB is

**AFFIRMED.**