[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-14025
Non-Argument Calendar

_____

D.C. Docket No. 4:20-cv-00025-CLS

OTIS STOWE,

Plaintiff-Appellant,

versus

SOCIAL SECURITY ADMINISTRATION, COMMISSIONER,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(July 12, 2021)

Before MARTIN, JORDAN, and ANDERSON, Circuit Judges.

PER CURIAM:

Otis Stowe appeals the district court's order affirming the Commissioner of Social Security's denial of his applications for a period of disability and disability insurance benefits. Mr. Stowe raises three issues on appeal. First, he asserts that the administrative law judge ("ALJ") did not properly apply the pain standard to his testimony and that he should have more fully developed the record regarding his testimony about his medication's side effects. Second, he contends that the ALJ failed to adequately address and weigh the opinions of treating physician Dr. William Stewart and state agency consultant Dr. Sathyan Iyer. Finally, he argues that the ALJ's finding that he retains residual functional capacity ("RFC") to perform light work was not supported by substantial evidence. We address each issue in turn.

**I**

Mr. Stowe applied for a period of disability and disability insurance benefits ("DIB") in August of 2016, stating an alleged onset date of April of 2016. In his disability report, he declared that he had stopped working due to bulging discs in his lower back and that he was being prescribed hydrocodone by Dr. Stewart for pain. A function report, filed in September of 2016, indicated that Mr. Stowe struggled with daily activities and had trouble walking. He used crutches, canes, and a brace— only the last of which was prescribed by a doctor. Mr. Stowe's employment history report indicated that he had previously worked as a truck driver and laborer in jobs

which required him to lift jackhammers, use forklifts, pour concrete, and write reports.

In March of 2017, the SSA denied Mr. Stowe's DIB claim after concluding that he could indeed perform light work. The state agency consultant, Dr. Marcus Whitman, opined that Mr. Stowe could occasionally lift or carry up to 20 pounds; that he could frequently lift or carry up to 10 pounds; and that he could stand, walk, or sit for 6 hours out of a normal workday. Dr. Whitman also said that Mr. Stowe could climb ramps or stairs occasionally and that he could occasionally balance, kneel, or crawl—but that he could never climb ladders, ropes, or scaffolds. Dr. Whitman also discussed Mr. Stowe's environmental limitations, which include aversions to extreme cold, humidity, and vibration, as well as a need to avoid all exposure to hazards such as machinery or heights. After the initial denial of benefits, Mr. Stowe requested a hearing before an ALJ.

At a hearing in November of 2018, Mr. Stowe testified that he was injured on April 24, 2016, when a concrete chute buckled and fell on top of him. He said that his surgery, in November of 2016, was not effective.

Mr. Stowe testified that he had lost his commercial drivers' license after being unable to pass a physical exam and that he could not work full time anymore due to back pain following surgery. He testified that he took medicine to manage his pain, that he required help from his wife to dress in the morning, and that he had a hard

3

time lifting his arms.  He said his pain was a six or seven out of ten without medication, and that the medication reduced it to a five but made him drowsy.  He had not seen a doctor about the pain in his arms.  He attended the hearing using a cane, which he said he had used since his injury in 2016.  Dr. William Stewart, the treating physician, had recommended that Mr. Stowe use the cane, but he had not prescribed it.

At the hearing, the ALJ heard from a vocational expert.  The expert testified that a hypothetical individual with the same age, education, experience level, and limitations as Mr. Stowe could not perform his past work but that such an individual would be able to work as a marker, routing clerk, inspector, or hand packer.

Mr. Stowe submitted medical evidence from several doctors in support of his claims.  In July of 2016, Mr. Stowe reported lower back and bilateral hip pain to Dr. Stewart, his treating physician at the Northeast Orthopedic Clinic, P.C.  Mr. Stowe had surgery in early November of 2016, and following surgery, he reported to Dr. Stewart that he no longer had leg pain and only had lower back pain.

On November 19, 2016, Dr. Sathyan Iyer—acting as a state agency consultant—saw Mr. Stowe.  Dr. Iyer reported that Mr. Stowe could not walk without a cane, and that he could not walk on his heels, tiptoes, or squat, due to a balance issue. Due to the balance issue, Dr. Iyer could not evaluate Mr. Stowe's full range of motion in his spine.  Still, Dr. Iyer concluded that Mr. Stowe would have

4

significant impairment of functions requiring standing, walking, climbing, working at heights, working around moving machinery, bending, lifting, pushing, pulling, and overhead activities. But, Dr. Iyer said, Mr. Stowe did not appear to have any significant limitation of functions involving sitting, handling, hearing, or speaking.

Mr. Stowe returned to Dr. Stewart in late 2016 and early 2017. In those months, Dr. Stewart reported that Mr. Stowe's symptoms had slightly improved and that he was not in acute distress. He also expressed confusion over Mr. Stowe's continued complaints of back pain. By a March 2017 visit, Mr. Stowe's back was responding to physical therapy, and he reported a pain level of around three or four. In June of 2017, Dr. Stewart noted that Mr. Stowe was alert with a normal posture and gait, and that his medication dosage had been decreased due to the side effect of nausea. A few months later, Dr. Stewart opined that Mr. Stowe was "maxed out" in terms of physical therapy and that more surgery would not be effective.

In July of 2017, Mr. Stowe had his permanent medical impairment evaluation for worker's compensation. He received an impairment rating of 12 percent.

Dr. Stewart gave Mr. Stowe his final evaluation in August of 2017. Based on the impairment rating, Dr. Stewart stated that Mr. Stowe was not rated for permanent disability but was limited to sedentary light duty capacity, which might require Mr. Stowe to be repositioned or reassigned in the work force.

Four months later, Dr. Stewart saw Mr. Stowe for complaints of shoulder pain. An x-ray revealed severe bilateral impingement, and Dr. Stewart administered a corticosteroid injection.   In the following months, Mr. Stowe continued to complain of back and shoulder pain to various doctors.

In December of 2018, the ALJ denied Mr. Stowe's applications.  The ALJ found that Mr. Stowe had severe impairments of back degenerative disc disease and bilateral shoulder degenerative joint disease.   The ALJ found that the other conditions were non-severe, and that neither of Mr. Stowe's severe impairments amounted to a specified listing.

The ALJ next found that Mr. Stowe had the RFC to perform light work with the following limitations: occasional climbing of ramps or stairs; no climbing of ladders, ropes, or scaffolds; occasional reaching with his right arm but no reaching with his left arm; no concentrated exposure to cold, humidity, and vibration; and no exposure to hazards such as open flames, unprotected heights, and moving machinery.  The ALJ noted that Mr. Stowe had walked with a normal gait since August of 2017, and that his medication was effective.  The ALJ also noted that in June 2017, Mr. Stowe had decreased his dose of pain medication due to the side effects of nausea and vomiting.

The ALJ gave Dr. Whitman's opinion (which limited Mr. Stowe to light work with some postural and environmental restrictions) substantial weight because it was

6

consistent with the objective medical evidence. But the ALJ gave little weight to Dr. Iyer's opinion that Mr. Stowe had a significant impairment of function, reasoning that it had occurred just two weeks after Mr. Stowe's surgery and therefore was too soon of an examination to be reliable.

The ALJ further found that Mr. Stowe was unable to perform any past relevant work, but that he was not disabled because there were jobs that existed in significant numbers that he could still perform given his RFC. The ALJ based his decision on the vocational expert's testimony that Mr. Stowe could work jobs such as a marker or inspector. Accordingly, the ALJ found that Mr. Stowe had not been disabled since the alleged onset date.

Mr. Stowe sought review of the ALJ's decision. He submitted additional evidence to the Appeals Council—specifically, an Alabama handicap parking pass application from July of 2019, in which a doctor declared that Mr. Stowe could not walk unassisted, was severely limited in his ability to walk due to an orthopedic condition, and had a long-term disability. The Appeals Council denied Mr. Stowe's request for review.

Mr. Stowe then filed a complaint in district court, arguing that the Appeals Council's review was conclusory because it failed to discuss the new evidence he submitted. He also argued that the ALJ's finding was not based upon proper evidence and was not determined by proper legal standards.

Specifically, Mr. Stowe argued (1) that the ALJ did not show good cause for failing to assign the proper weight to Dr. Stewart's opinion, which was that Mr. Stowe was restricted to jobs with "sedentary light duty activity capacity"; (2) that the RFC finding that he could perform light work was not supported by substantial evidence and was contrary to the opinions of Drs. Iyer and Stewart; (3) that the ALJ improperly applied the pain standard; (4) that the ALJ did not adequately consider his testimony regarding the side effects of his pain medication; and (5) that the RFC finding was not based on substantial evidence because the VE testimony was the product of a flawed hypothetical.

The district court affirmed the ALJ's decision, and Mr. Stowe appealed.

## II

We review a Social Security case to determine whether the Commissioner's decision is supported by substantial evidence and review *de novo* whether the correct legal standards were applied. *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Substantial evidence is any relevant evidence, greater than a scintilla, that a reasonable person would accept as adequate to support a conclusion. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). If, in light of the record as a whole, substantial evidence supports the Commissioner's decision, we will not disturb it. *See id.* at 1439. Under this standard of review, we will not decide the

facts anew, make credibility determinations, or re-weigh the evidence. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

An individual claiming DIB must prove that he is disabled. *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). An ALJ uses a five-step, sequential evaluation process to determine whether a claimant is disabled. *See Winschel*, 631 F.3d at 1178. If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ makes the determination or decision and does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a)(4). At step four of the sequential analysis, the ALJ must assess and determine a claimant's RFC by considering all relevant medical and other evidence. *See* 20 C.F.R. §§ 404.1520(e), 404.1527(e), 404.1546(c). *See also Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). An RFC is the most a claimant can do despite his restrictions, not the least. *See* SSR 96-8p, 61 Fed. Reg. 34,474-05 (July 2, 1996).

## III

Mr. Stowe first argues that the ALJ failed to consider or discuss his testimony about the side effects of his pain medication. He argues that the ALJ did not specifically address his testimony that his pain medication "knocks [him] out." The Commissioner responds that the ALJ was not specifically required to discuss every portion of Mr. Stowe's testimony, and that, in any event, the ALJ referred in his

decision to Mr. Stowe's medications and reported side effects. The Commissioner further argues that any error in omitting a discussion of this testimony is harmless.

A three-part "pain standard" applies when a claimant attempts to establish disability through his own testimony of pain or other subjective symptoms. *See Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). The pain standard requires evidence of an underlying medical condition, and either objective medical evidence that confirms the severity of the alleged pain arising from that condition or a showing that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. *See id.* Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *See Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *See id.* at 1562. Credibility findings do not need to cite "particular phrases or formulations" to be adequate. *Id.* (quotation marks omitted).

A claimant's subjective symptoms, such as pain, include the effectiveness and side effects of any medications for those symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv). We have previously concluded that an ALJ's failure to inquire further into the side effects of a counselled claimant's

10

medications did not deprive her of a meaningful opportunity to be heard when the only indication of side effects was her statement that her medication made her drowsy. *See Cherry v. Heckler*, 760 F.2 1186, 1191 n.7 (11th Cir. 1985) (representation by counsel at an administrative hearing is relevant in analyzing whether a claimant had a meaningful opportunity to be heard). Indeed, an ALJ is not required to discuss every piece of evidence, so long as the ALJ's decision is not a broad rejection and there is enough for us to conclude that the ALJ considered the medical condition as a whole. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).

In this case, the ALJ properly applied the pain standard to Mr. Stowe's testimony. The ALJ clearly articulated specific and adequate reasons for not fully crediting Mr. Stowe's testimony regarding his own pain. *See Foote*, 67 F.3d at 1561-62 ("If the ALJ decides not to credit a claimant's testimony as to [his] pain, he must articulate explicit and adequate reasons for doing so.") Here, the ALJ noted that while Mr. Stowe's medically determinable impairments could be reasonably expected to cause the symptoms alleged in his testimony, the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence in the record. For example, the ALJ pointed out that Mr. Stowe had used a cane and expressed difficulty walking at his worker's compensation impairment

11

evaluation, despite Dr. Stewart's observations, shortly before and shortly after that evaluation, that Mr. Stowe had a normal posture and gait.

"A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1562. We therefore decline to disturb the ALJ's credibility finding, as there is substantial supporting evidence in the record. For example, Mr. Stowe showed up to the hearing using a cane even though he was never prescribed one, and even though doctors had reported a normal gait and posture. Moreover, Dr. Stewart's notes indicate that Mr. Stowe responded positively to the back surgery and that he improved afterwards in response to physical therapy and pain medication. Finally, despite Mr. Stowe's testimony that his pain medicine knocked him out, Dr. Stewart and other providers repeatedly noted that he was clinically alert. And the objective medical record evidence showed that Mr. Stowe reported multiple times that he had no problems with his medications.

Nor did the ALJ err by failing to develop the record further regarding the side effects of Mr. Stowe's medication in response to his testimony. Mr. Stowe, as the claimant, had the burden of proving that he is disabled. *See Moore*, 405 F.3d at 1211. At the hearing, he had the benefit of an attorney to help him develop the record regarding the side effects of his medication. *See Cherry v. Heckler*, 760 F.2d 1186, 1191 n.7 (11th Cir. 1985). *Cf. Cowart v. Schweiker*, 662 F.2d 731, 737 (11th

Cir. 1981) (holding that ALJ failed to fully develop the record by failing to elicit testimony or make findings regarding the side effects of a pro se claimant's medications). And the ALJ did try to develop the record after hearing Mr. Stowe's testimony that his pain medication knocked him out, resulting in Mr. Stowe further testifying that he took the medication that knocked him out only at night and that he took other pain medication during the day. As we have said, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).

In sum, substantial evidence supported the ALJ's credibility finding. The ALJ did not err by failing to develop the regard more fully in light of Stowe's testimony regarding the side effects of his medication, as Stowe was represented at the hearing and the objective medical evidence showed that Stowe did not have issues with his medication. We therefore affirm on this ground.

## IV

Mr. Stowe next argues that the ALJ failed to give proper weight to the opinion of Dr. Stewart, his treating orthopedic physician, and to the opinion of the state agency consultant, Dr. Ayer. He asserts that the ALJ ignored both physicians' opinions and instead substituted his own without sufficient legal explanation. The Commissioner responds that Dr. Stewart's August 2017 treatment record and Dr. Iyer's 2016 opinion do not undermine the ALJ's decisions. The Commissioner

notes, first, that medical source opinions that go to the extent of a claimant's disability and would be dispositive of a case are not medical opinions; and second, that the opinion of a non-treating doctor such as Dr. Iyer is not entitled to deference or special consideration. Therefore, the Commissioner argues, the ALJ did not need to show good cause for the weight assigned to Dr. Iyer's opinion. And, the Commissioner adds, the ALJ's decision to assign Dr. Iyer's opinion little weight is supported by the fact that Dr. Iyer examined Mr. Stowe shortly after his back surgery, before other evidence showed improvement with conservative treatment.

As to Dr. Stewart, the Commissioner concedes that the ALJ did not assign a specific weight to Dr. Stewart's discussion of the 12 percent impairment rating but argues that this does not warrant remand. This is especially the case, the Commissioner says, because the ALJ extensively discussed Dr. Stewart's treatment notes—including his statements about the impairment rating, and how Mr. Stowe received the 12 percent impairment rating after presenting inconsistent symptoms at that evaluation. Finally, the Commissioner argues that the ALJ's decision was not inconsistent with Dr. Stewart's discussion of the 12 percent impairment rating, because Dr. Stewart observed that Mr. Stowe was alert and had a normal posture and gait, stated that Mr. Stowe did not rate for a permanent disability, and noted that Mr. Stowe could return to work under certain restrictions.

"Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairments, including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairments, and [the claimant's] physical or mental restrictions." 20 C.F.R. § 416.927(a)(1). State agency medical or psychological consultants are considered "experts in Social Security disability evaluation," and the ALJ must consider and assign weight to their opinions in the same manner as any other medical source. *See* 20 C.F.R. §§ 404.1527(f)(2), 416.927(f)(2). Treatment notes can constitute medical opinions if they contain the content set out in 20 C.F.R. § 416.927(a)(1). *See Winschel*, 631 F.3d at 1179. The ALJ must state with particularity the weight given to different medical opinions and the supporting reasons. *Id.*

The Social Security Regulations define a "treating source" as a medical source, including a physician, who has provided the claimant with medical treatment and has, or previously had, an ongoing treatment relationship with the claimant. *See* 20 C.F.R. § 404.1502. The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips*, 357 F.3d at 1240 (citation omitted). Good cause exists when (1) the treating physician's opinion was not supported by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with his own medical records. *See Winschel*, 631 F.3d at 1179. When

15

good cause exists, the ALJ may disregard a treating physician's opinion, but must clearly articulate the reasons for doing so. *See id.* The failure to do so is reversible error. *See Lewis*, 125 F.3d at 1440. Opinions on issues that constitute administrative findings that are dispositive of a case and would direct the determination of disability are not medical opinions, and instead are issues reserved for the Commissioner. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Such opinions are not entitled to any special significance. *See* §§ 404.1527(d)(3), 416.927(d)(3). Here, the ALJ properly discussed and weighed the opinions of Drs. Iyer and Stewart.

With respect to Dr. Iyer, the ALJ stated that he gave the opinion little weight and articulated the reasons for doing so. The ALJ said he found Dr. Iyer's opinion was not reliable given how soon Dr. Iyer saw Mr. Stowe after his back surgery. **[AR at 65]**. Dr. Iyer was not a treating physician, so the ALJ did not have to show good cause for giving the opinion less than substantial or considerable weight.

Dr. Stewart was a treating physician, but the ALJ did not need to discuss Dr. Stewart's comments on Mr. Stowe's impairment evaluation. Those comments (about how Mr. Stowe's 12 percent impairment rating would limit him to sedentary work) would direct the determination of disability and therefore do not constitute a medical opinion. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Accordingly, the comments are not entitled to any special significance. *See* 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3). In any event, the ALJ did discuss Dr. Stewart's notes

16

following Mr. Stowe's impairment evaluation in recognizing that Mr. Stowe presented more severe symptoms at his impairment evaluation than at his visits to Dr. Stewart.  Dr. Stewart's notes, like the ALJ's final decision, concluded that Mr. Stowe was not permanently disabled and that he could be relocated within the workforce.

We therefore affirm on this ground as well.

## V

Finally, Mr. Stowe argues that the ALJ's RFC finding that he could perform light work with limitations was conclusory.  He asserts that the ALJ simply summarized the evidence without providing a narrative discussion about why he reached the RFC finding that Mr. Stowe could perform light work with limitations. Mr. Stowe says the ALJ failed to discuss his ability to perform sustained work activities in an ordinary workday, in violation of SSR 96-8p (requiring the adjudicator, in assessing RFC to "discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record").  He argues that the record did not support a finding that he could perform light work and that the ALJ's decision was not based on substantial evidence.  And Mr. Stowe summarily asserts—in two sentences and without citing any law—that the VE's

testimony was not substantial evidence because it was based on a flawed hypothetical.

As an initial matter, Mr. Stowe has abandoned his argument that the VE's testimony did not amount to substantial evidence. In his initial brief he raises that issue in only two sentences without citing any supporting authority. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (a party abandons a claim not adequately briefed on appeal and fails to adequately brief claim when he raises it in a perfunctory manner without supporting arguments or authority).

As for the rest of Mr. Stowe's argument, in formulating an RFC, the ALJ considers a claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4). The ALJ examines all relevant medical and other evidence, including "any statements about what [the claimant] can still do that have been provided by medical sources" and "descriptions and observations" by the claimant, his family, his neighbors, his friends, or others, of his limitations, including limitations resulting from pain. 20 C.F.R. § 404.1545(a)(3). The RFC finding must include a narrative discussion describing how the evidence supports the ALJ's conclusion, citing specific medical facts and nonmedical evidence and discussing the claimant's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis. *See* SSR 96-8p, 61 Fed. Reg. 34,478 (July 2, 1996).

Here, the ALJ's RFC finding and ultimate decision were not conclusory and were based on substantial evidence. The ALJ discussed in narrative form Mr. Stowe's recovery from back surgery and the eventual presentment of his bilateral shoulder pain. *See* SSR 96-8p. In this discussion, the ALJ cited specific medical facts—including Dr. Stewart's extensive treatment notes, state agency consultant opinions, Mr. Stowe's records from Cherokee Pain Management, and Mr. Stowe's own hearing testimony. The ALJ discussed how Mr. Stowe's back responded to treatment—specifically, how treatment increased Mr. Stowe's abilities to bear weight and walk. In making the RFC finding, the ALJ discussed Mr. Stowe's ability to perform light work in a working environment with certain limitations that corresponded to Mr. Stowe's back and shoulder impairments.

The ALJ's RFC finding was not conclusory and was supported by substantial evidence. Accordingly, we affirm as to this ground too.

## VI

We affirm the Commissioner's denial of Mr. Stowe's applications.

**AFFIRMED.**