[DO NOT PUBLISH]

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 21-12804

Non-Argument Calendar

_____

MICHAEL LANCE TAYLOR,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:20-cv-00578-DCI

_____

Before JILL PRYOR, BRANCH, and BRASHER, Circuit Judges.

PER CURIAM:

Michal Taylor appeals the district court's order affirming the Commissioner of Social Security's denial of his applications for a period of disability and disability insurance benefits. Taylor contends that the administrative law judge improperly discounted the opinions of his treating physicians and made findings not supported by substantial evidence. He also argues that the ALJ erred by relying solely on objective medical evidence to discredit his testimony about the limiting effects of his pain. After careful review, we affirm the Commissioner's denial of benefits.

## I.

Taylor applied for Social Security benefits in 2016, contending that he became unable to work due to his medical condition on May 15th of that year. His application stated that pain frequently impaired his ability to stand, walk, lift, drive, and move, and caused difficulty concentrating. Taylor also reported that he quit his prior job due to these limitations. The Commissioner denied the claim initially and upon reconsideration, concluding each time that Taylor's medical conditions did not render him incapable of performing work requiring less physical effort than his previous occupation.

Taylor then requested a hearing before an ALJ. Prior to the hearing, Taylor submitted medical records and two medical source

statements from treating physicians, Drs. James Scott and Michael Kohen. Both physicians opined that Taylor functioned at a less than sedentary level. For example, the physicians opined that in a regular workday, Taylor could sit, stand, or walk for two hours or less, he would require frequent unscheduled breaks, he would be off-task 20% or more of the day, and he would miss four or more days of work each month. Both physicians also opined that Taylor had significant limitations with reaching, handling, or fingering. A vocational expert would later testify that no jobs exist for a person with such limitations.

At the hearing, Taylor testified that rheumatoid arthritis, lupus, hypermobility, and neck and back pain were the medical conditions preventing him from working. Most days he was home alone, and he "spen[t] an awful lot of time in the bed." He couldn't sit for more than 30 minutes without getting up to move around, couldn't stand in one place without moving for more than five minutes, and couldn't walk more than 30 feet without taking a break. As for other physical activities, Taylor testified that he hurt his back lifting a 12-pack of soda, he struggled to extend his arms in any direction, and he struggled with handling small objects like coins and buttons. The only household task Taylor sometimes completed was making breakfast, but he couldn't fold laundry or cut up vegetables. And although Taylor sometimes drove, he didn't like to because he couldn't feel the gas pedal with his feet.

After Taylor's testimony, the ALJ asked a vocational expert whether a hypothetical person with the following limitations could

perform Taylor's past relevant work: the person could lift or carry 10 pounds frequently, but 20 pounds only occasionally; he could stand, walk, or sit for a total of six hours per workday with normal breaks; he could never climb ladders, ropes, or scaffolds, but could occasionally climb ramps and stairs, balance, kneel, stoop, crouch, and crawl; he must avoid concentrated exposure to unprotected heights, moving mechanical parts, and extreme cold; and he could perform simple and multiple-step routine tasks and could have occasional contact with others. The vocational expert testified that such limitations would preclude a person from performing Taylor's past relevant work but would not preclude him from performing other work. And the same would be true if the person was somewhat limited in reaching and handling. However, if the person could only occasionally reach and feel, the vocational expert testified that "[v]ery, very few" jobs exist for such a person. The vocational expert testified also that a person with the restrictions provided in Drs. Scott's and Kohen's statements would be incapable of performing any known jobs.

In a written decision, the ALJ concluded that Taylor was not disabled under the Act. At step two of the sequential evaluation process, *see* 20 C.F.R. § 404.1520, the ALJ explained that Taylor suffered from the following severe impairments: undifferentiated and mixed connective tissue disorder, neuropathy, spine disorder, shoulder disorder, fibromyalgia, attention deficit hyperactivity disorder, affective disorder, and anxiety disorder. The mental

impairments identified by the ALJ and the limitations they impose on Taylor are not relevant to this appeal.

At step four, the ALJ found that Taylor had the residual functional capacity to perform work limited to lifting/carrying 20 pounds occasionally and 10 pounds frequently, he could sit, stand, or walk for a total of six hours per eight-hour workday, and he could "frequently handle/feel with the bilateral upper extremities" and "frequently reach in all directions w[ith] the bilateral upper extremities." Taylor could also "occasionally climb ramps and stairs, balance, kneel, stoop, crouch and crawl."

In reaching this conclusion, the ALJ made two findings that are the subject of this appeal. First, the ALJ discredited Taylor's testimony about the intensity, persistence, and limiting effects of his symptoms, finding that it was "not entirely consistent with the medical evidence and other evidence in the record." For example, the ALJ concluded that Taylor's testimony about the severity of his pain was inconsistent with physician progress notes indicating relief from epidural steroid injections. The ALJ also noted that although Taylor testified to balance issues, he had recently "reported [to a physician] that he had only fallen [one] time" over the last year. In all, the ALJ concluded that the "the overall evidence" supported the lifting, carrying, standing, walking, manipulative, and postural limitations imposed, instead of the stricter limitations supported by Taylor's testimony. Second, the ALJ gave "little weight" to Taylor's treating physicians' opinions. The ALJ explained that the opinions were "overly restrictive based on the overall evidence

of record." The ALJ gave six reasons, discussed in more detail below, for discounting the opinions.

Based on Taylor's residual functional capacity, he could not perform his past relevant work; but, based on the vocational expert's testimony, the ALJ explained that "there were jobs that existed in significant numbers in the national economy that the claimant could have performed" during the relevant period. Therefore, Taylor was not disabled. Taylor sought review of the denial of benefits by the Appeals Council, contending that "[t]he finding from [his] physicians [was] inconsistent with the finding from the [ALJ]." The Appeals Council denied his request for review.

Taylor later filed a complaint in district court seeking review of the determination that he was not entitled to disability benefits. The district court affirmed the Commissioner's decision, rejecting Taylor's arguments that the ALJ applied the wrong legal standard to his testimony and the opinions of his treating physicians. Taylor timely appealed.

## II.

Our standard of review "is the same as that of the district court." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004). That is, we ask whether the ALJ's decision was "supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). "'Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'"

*Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *id.*). Our review precludes us from "decid[ing] the facts anew, reweigh[ing] the evidence, or substitut[ing] our judgment for that of the [Commissioner]." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

## III.

Taylor makes two arguments on appeal. First, he contends that the ALJ improperly diminished the weight of the treating physician opinions provided by Drs. Scott and Kohen by applying the wrong legal standard and making findings not supported by substantial evidence. Second, Taylor argues that the ALJ improperly discredited his testimony on the severity of his pain.

### A.    *The ALJ Articulated Specific, Evidence-Based Reasons for Discounting the Opinions of Taylor's Treating Physicians.*

Taylor argues that the ALJ failed to apply the correct legal standard to the opinions of his treating physicians. Specifically, he contends that the reasons the ALJ gave for discounting his treating physicians' opinions were not supported by substantial evidence. The Commissioner responds that Taylor's argument is merely an invitation for this Court to reweigh the evidence, and we agree.

An individual claiming entitlement to disability benefits must prove that he is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam). A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The burden of proving disability always rests with the claimant. *See* 20 C.F.R. § 404.1512(a)(1).

The ALJ uses a five-step, sequential evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(1). This appeal concerns the ALJ's determination at step four, which evaluates the claimant's "residual functional capacity and [his] past relevant work." *Id.* § 404.1520(4)(iv). To determine Taylor's residual functional capacity, the ALJ considered medical opinions, including those of Taylor's treating physicians. For claims filed on or before March 27, 2017, the Social Security Administration "give[s] more weight to medical opinions from [a claimant's] treating sources." 20 C.F.R. § 404.1527(c)(2). And we have explained that "the testimony of a treating physician must be given substantial or considerable weight unless good cause is shown to the contrary." *Lewis*, 125 F.3d at 1440 (quotation omitted). Good cause "exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1241. An ALJ

"must clearly articulate the reasons for giving less weight to the opinion of a treating physician," and the failure to do so is reversible error. *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1259 (11th Cir. 2019) (per curiam). We will not speculate about the grounds an ALJ may have relied on to give less weight to an opinion, but when the ALJ articulates specific reasons for failing to give the opinion of a treating physician controlling weight and those reasons are supported by substantial evidence, there is no reversible error. *Moore*, 405 F.3d at 1212.

Here, the ALJ articulated several reasons for giving little weight to Drs. Scott's and Kohen's opinions. As an initial matter, it was not error for the ALJ to consider the separate opinions together, as they did not differ in any material respect. Each physician concluded that Taylor's symptoms would cause significant limitations with reaching, handling, or fingering, that he would need to frequently shift from sitting, standing, or walking, that he would need frequent breaks, and that he would miss at least one day of work per week on average. To be sure, the physicians were treating Taylor for different ailments. Dr. Scott listed Taylor's diagnosis as "neuropathy," manifesting as "pain in legs, numbness, neck pain, fatigue, [and] memory issues." Dr. Kohen was treating Taylor for a slew of maladies, but he listed similar symptoms, such as joint pain, instability, muscle pain, weakness, and fatigue. Nonetheless, the physicians' bottom-line conclusions were nearly identical.

The ALJ viewed these opinions as "overly restrictive" for six reasons, and Taylor takes issue with each. First, the ALJ noted that

Taylor's "gait/station" and "muscle strength" were frequently reported by physicians as "normal." Taylor contends that the ALJ "failed to cite any evidence in support of [this] finding," and that the record contains "multiple notations" of his "antalgic gait and stance" and "reduced muscle strength/weakness." But just two paragraphs prior in the ALJ's decision, the same statement was supported by citation to treatment notes by Dr. Scott and another physician. And contrary to Taylor's suggestion, the record is replete with examples of physicians, including Drs. Scott and Kohen, reporting that Taylor presented with normal muscle strength. Indeed, the Commissioner points us to no less than 20 such occasions in its brief. We have explained that it is not enough for a claimant to point to *some* evidence in support of a disability. *See Moore*, 405 F.3d at 1213 (explaining that even when a claimant identifies "other evidence which would undermine the ALJ's [disability] determination," our standard of review "precludes us" from disturbing a determination otherwise supported by substantial evidence). Because the ALJ's reasoning finds substantial support in the record, Taylor's argument is not meritorious.

Second, the ALJ noted that Taylor's pain was sometimes relieved by treatment—specifically, epidural steroid injections. Taylor argues that such "relief was short-lived and related to his neck and back pain," not the conditions Drs. Scott and Kohen treated him for. In reality, however, both Drs. Scott and Kohen listed pain as a symptom that impacts Taylor's ability to work, and Dr. Scott specifically listed "neck pain" as a symptom of Taylor's

neuropathy. Thus, if Taylor's neck pain was somewhat relieved by treatment, then it would tend to make the physicians' opinions inconsistent with the record. *See Phillips*, 357 F.3d at 1241. The medical evidence shows that the injections worked: Taylor reported as much as a 60% reduction in pain after an injection in March 2015; and as late as June 2018, Dr. Kohen noted that Taylor was "getting injections in his neck and low back with some relief." Again, substantial evidence supports the ALJ's reasoning.

Third, the ALJ explained that electromyography ("EMG") studies indicated that Taylor had mild, rather than severe, cervical radiculopathies. Taylor objects to this evidence, contending that the ALJ "completely overlooked" studies "support[ing] a finding that [he] suffered from severe peripheral neuropathy." But of the three studies Taylor cites—performed on July 19, 2016, December 19, 2016, and November 2, 2018—only the last one resulted in a finding that was "consistent with a severe axonal motor and sensor polyneuropathy." And an EMG study conducted one week later indicated only "mild" findings. Accordingly, the ALJ's reasoning was supported by substantial evidence. *See Moore*, 405 F.3d at 1215.

Fourth, the ALJ noted that Taylor "reported that his hypermobility syndrome was fairly controlled with medications." Taylor contends that Drs. Scott and Kohen were not treating him for hypermobility, and whether it was under control had nothing to do with their conclusions. But that is plainly not the case. Dr. Kohen treated Taylor for hypermobility—identified in his treatment notes by the code M35.7—by, among other things, giving Taylor an

injection in his wrist. *See Schink*, 935 F.3d at 1262 (examining whether treating physicians' notes "fleshed out and were consistent with their conclusions"). And in his treating source opinion, Dr. Kohen listed M35.7 as one of Taylor's diagnoses. Thus, whether Taylor's hypermobility was well controlled bears directly on the consistency of Dr. Kohen's opinion "with the doctor's own medical records." *Phillips*, 357 F.3d at 1241. And because he does not challenge the ALJ's finding that his hypermobility was adequately managed with medication, we conclude that the ALJ's reasoning was substantially supported by the evidence.

Fifth, the ALJ concluded that the physicians' opinions conflicted with CT scans of Taylor's spine that "showed mild to moderate degenerative changes with only mild neural foraminal narrowing." Taylor again contends that the ALJ "completely ignored" other "MRI findings of his cervical and lumbar spine" that "documented significant findings." Again, however, Taylor's assertion falls flat. He does not explain what "significant findings" the MRI studies allegedly revealed. The MRIs he relies on revealed "stable," "mild," and "small" findings, some of which were listed as "resolved" or "not worsening." Taylor fails to explain how these studies undermine the ALJ's conclusion, and we see no inconsistency on the face of the studies.

Sixth and finally, the ALJ noted that Drs. Scott's and Kohen's opinions conflicted with Taylor's own reported activities of daily living. Taylor argues that the ALJ failed to refer to any specific activities that were inconsistent with the opinions. And he contends

that merely being able to do "everyday activities" is not enough to "disqualif[y] a claimant from disability." *See Lewis*, 125 F.3d at 1441. The Commissioner responds that although the ALJ did not "expressly detail" Taylor's reported activities of daily living, the ALJ referred to them "elsewhere in the decision." For example, when considering the severity of Taylor's mental limitations, the ALJ referred to a psychological evaluation conducted by Dr. Jonas Trinidad. From this evaluation, the ALJ explained that Taylor "reported that he cared for his personal hygiene, that he drove, and that he prepared meals." And Trinidad's report listed other activities, including "spending time with [his] kids" and "complet[ing] basic household chores with assistance."

We agree that the inconsistency between Taylor's activities of daily living and the limitations suggested by his treating physicians is less apparent than the other inconsistencies identified by the ALJ. But our review of the record does not convince us that the decision is unreasonable or unsupported by substantial evidence. True, the activities of daily living relied on by the ALJ are not enough to disqualify Taylor from eligibility for disability benefits, *Lewis*, 125 F.3d at 1441, but that is not what occurred here. Instead, the ALJ explained that the activities of daily living were inconsistent with a medical opinion. We review only whether the ALJ's articulated reason was supported by "more than a scintilla" of evidence, *id.* at 1440, and we readily conclude that it was.

For these reasons, the ALJ gave sufficient reasons for discounting Taylor's treating physicians' opinions. Contrary to

Taylor's suggestion, we need not "scour the record to find support for the ALJ's decision," as the ALJ articulated six evidence-based inconsistencies between the treating physicians' opinions and Taylor's medical records. That is all we require. *See Phillips*, 357 F.3d at 1240 (affirming the denial of benefits "[b]ecause the ALJ articulated several legitimate reasons for giving less weight to [a treating physician's] opinion").

B.    *The ALJ Relied on Appropriate Evidence to Discredit Taylor's Testimony.*

Finally, Taylor contends that the ALJ rejected his testimony "solely based on the lack of objective medical evidence." By not considering any of the "factors that [the Social Security Administration] promises claimants it will consider . . . when evaluating a claimant's testimony regarding pain and limitations," Taylor argues that the ALJ applied the wrong legal standard to his testimony. We disagree.

A claimant may establish that he has "a disability through his own testimony of pain or other subjective symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). In such a case, the claimant must show evidence of an underlying medical condition and either "objective medical evidence that confirms the severity of the alleged pain arising from that condition" or "that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Once a claimant has

made this showing, the Commissioner "must then evaluate the intensity and persistence of [the claimant's] symptoms" in light of "all available evidence," including the claimant's testimony. 20 C.F.R. § 404.1529(c)(1). The Commissioner "will not reject" a claimant's statements "solely because the available objective medical evidence does not substantiate" the statements. *Id.* § 404.1529(c)(2). Instead, the ALJ considers several "[o]ther factors concerning [the claimant's] functional limitations and restrictions due to pain and other symptoms." *Id.* § 404.1529(c)(3)(i)-(vii).

If a claimant provides subjective testimony on the severity of his symptoms, as Taylor did here, the ALJ "must articulate explicit and adequate reasons" for rejecting the complaints. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995). The ALJ's "credibility determination does not need to cite particular phrases or formulations[,] but it cannot merely be a broad rejection" that fails to consider a claimant's "medical condition as a whole." *Dyer*, 395 F.3d at 1210-11 (cleaned up). We will not disturb "[a] clearly articulated credibility finding with substantial supporting evidence in the record." *Foote*, 67 F.3d at 1562.

Here, the ALJ concluded that Taylor's medically determinable impairments could reasonably be expected to cause some of the symptoms he alleged, and proceeded to consider Taylor's statements concerning the intensity, persistence, and limiting effects of the symptoms. The ALJ concluded that Taylor's testimony was "not entirely consistent with the medical evidence *and other evidence* in the record," and the ALJ articulated five reasons to

support that conclusion. Four of the reasons overlapped with the inconsistencies discussed previously—Taylor's pain was somewhat relieved by epidural steroid injections, his postural and muscular limitations were inconsistent with physical examinations, and EMG studies and CT scans revealed only mild objective findings. These four reasons were based on the objective medical evidence, and we have already explained that these reasons find substantial support in the record. See Jones v. Dep't of Health & Hum. Servs., 941 F.2d 1529, 1532 (11th Cir. 1991) (explaining that the reasons an ALJ articulates for "refus[ing] to credit a claimant's subjective pain testimony" must be "based on substantial evidence" (footnote omitted)).

However, Taylor is incorrect to suggest that the ALJ relied solely on objective medical evidence to discredit his testimony. As a fifth ground for discrediting Taylor's testimony, the ALJ noted that his testimony concerning "balance problems" was inconsistent with a physician's note indicating that Taylor reported "he had only fallen [one] time in the prior year." In other words, the ALJ discredited Taylor's testimony based on his own prior inconsistent statement. Cf. Foote, 67 F.3d at 1562 (explaining that an ALJ "failed to identify any inconsistencies between [the claimant's] statements to her physicians and those she has made . . . during her administrative hearing"). Thus, the ALJ articulated reasons for discrediting Taylor's testimony that were based on both objective evidence and a "conflict[] between [Taylor's] statements and the rest of the

21-12804                Opinion of the Court                17

evidence." 20 C.F.R. § 404.1529(c)(4). The ALJ employed the proper legal standard for discrediting Taylor's testimony.

## IV.

For the foregoing reasons, the Commissioner's denial of disability benefits is affirmed in all respects.

**AFFIRMED.**